## 75147. PALM RESTAURANT OF GEORGIA, INC. et al. v. PRAKAS et al.
(366 SE2d 826)

CARLEY, Judge.

Appellant-plaintiffs entered into a contract to sell the assets of a restaurant business to appellee-defendants. At the closing, appellee Athan Prakas executed two promissory notes in favor of appellant

Palm Restaurant of Georgia, Inc. (Palm Restaurant). When payment on the notes was not forthcoming, appellants brought this suit. Appellees answered, denying the material allegations of appellants' complaint, and filed a counterclaim. The case was tried before the trial court sitting without a jury. After making findings of facts and conclusions of law, the trial court entered judgment for $720 in favor of appellants. Appellants filed a motion for new trial on the general grounds. After their motion for new trial was denied, appellants instituted this appeal.

1. Appellants enumerate as error the trial court's finding that the purchase price of the assets sold to appellees was $125,000 and its finding that, after the closing, appellees' remaining obligation to appellants was only $55,000.

The undisputed evidence showed that the parties agreed to a purchase price of $135,000 for the assets. The evidence also would authorize only a finding that appellants had received $35,000 as earnest money prior to closing. The record is devoid of any evidence as to the exact amount of additional money, if any, that appellants had received at closing. Accordingly, the trial court's findings clearly are not supported by the evidence.

It would appear that, in making these findings, the trial court gave consideration to evidence as to *all* amounts which appellees may have paid to appellants in connection with the underlying transaction. However, the relevant issue was the amount of the *purchase price of the assets* and the extent to which that agreed upon purchase price remained unpaid after the closing. The undisputed evidence is that appellees agreed to a purchase price of $135,000 for the business assets. There is no evidence that *all* payments made by appellees to appellants were to be credited against that amount.

2. Appellants enumerate as error the trial court's finding that, after the closing, "substantial assets" had been taken from the premises by appellant Nick Jordan and its finding that, as the result of this loss of assets, appellees were entitled to a $10,000 offset against their obligation to appellants.

Appellant Jordan is the sole shareholder of appellant Palm Restaurant. Appellant Palm Restaurant contracted to sell to appellees "every item of furniture, furnishings, trade fixtures, goods, supplies, equipment and machinery" that it owned. The evidence showed that, after the closing, appellant Jordan had entered the premises, purportedly in order to collect items of his own personal property which consisted of a desk, a neon sign, and a cash register. Only appellant Jordan testified as to the total value of this property. His testimony was that its value was approximately $190. Although there was testimony that other items were missing from the premises after the closing, there was no probative testimony as to the value of any such items.

Assuming without deciding that the evidence authorized the trial court to find that all of the missing items had been taken by appellant Jordan and were the business assets of appellant Palm Restaurant and that appellant Jordan's removal of that property violated the terms of the purchase agreement or bill of sale, there is no evidence to support the trial court's finding that the value of the property removed was in excess of $190. Accordingly, the trial court's finding that appellant Jordan took substantial assets entitling appellees to a $10,000 set-off is erroneous.

3. The trial court found that appellees were entitled a $15,000 offset for the cost of repairs to defective equipment which appellants had warranted to be in working order. This finding is enumerated as error.

There is no evidence which would show that appellant Palm Restaurant had made any warranty as to the condition of the assets that it sold to appellees or which would authorize a finding that such a warranty had been breached. What the evidence does show is that, in addition to purchasing the assets of appellant Palm Restaurant, appellees subleased from appellants' former landlord the premises where the restaurant had been located. Appellees took possession of the premises in November of 1984. In December of 1984, appellees were forced to close their business because the defective condition of the heating system caused the gas company to refuse to supply gas to the premises. As the result of the gas shut-off, the heating system was not in operation when a hard freeze occurred in January of 1985. The water pipes located in the rented premises froze and burst, causing considerable water damage. Appellees undertook to make the necessary repairs and, as a result of this equipment failure and the subsequent repairs, appellees' business remained closed from December of 1984 until June of 1985. It is clear that complaints concerning the condition of the heating, plumbing and electric systems on the premises should have been directed to the landlord from whom they were being leased. No evidence was presented which would authorize the trial court to find that a breach of warranty by appellants entitled appellees to a $15,000 set-off as against the purchase price of appellant Palm Restaurant's assets.

4. Appellants enumerate as error the trial court's finding that appellees had been prevented from commencing business operations for six months as the result of appellant Jordan's conduct and its finding that appellees were entitled to an offset in the amount of $20,280 for rent paid during that six-month period.

The evidence showed that, in April of 1985, appellant Jordan had written a letter to the Bureau of Police. In that letter, appellant Jordan stated that he had closed his business, that the business assets had been sold to appellees, and that appellees had failed to fulfill cer-

tain of their obligations under the purchase agreement. Appellant sent copies of this letter to the Georgia Department of Revenue and the Georgia Alcohol and Tobacco Unit.

Although appellees urge that the trial court was authorized to find that appellant Jordan's letter had impeded their ability to obtain a liquor license and had thereby delayed the opening of their business for six months following the closing, the record shows that appellees were issued a liquor license in June of 1985. Since appellant Jordan's letter had not been written until April of 1985, it is apparent that the letter could only have had an effect on appellees' obtaining a liquor license for three months at most.

Appellee Athan Prakas himself testified that, before his business could obtain a liquor license, it was required to have a certificate of occupancy and that such a certificate of occupancy could not be obtained until all the electrical, heating, and plumbing repairs had been completed. When appellees were issued a certificate of occupancy in June of 1985, the liquor license was issued a short time later. This evidence shows that the six-month delay in obtaining a liquor license cannot be attributed to appellant Jordan's letter, but to the delay in having the premises repaired so as to secure the necessary certificate of occupancy. As discussed in Division 3, appellants had no obligation to appellees as to repair the premises. Accordingly, any delay in appellees' receipt of a liquor license was not caused by any of the actions of appellant Jordan.

Appellees further contend that the trial court was authorized to find that the opening of their business had been delayed as the result of appellant Jordan's removal of "substantial assets." However, as discussed in Division 2, no "substantial assets" had been removed from the premises. It follows that the trial court's findings are erroneous.

5. Appellants enumerate as error the trial court's finding that appellant Jordan had unlawfully interfered with appellees' business so as to cause appellees to lose $9,000 in anticipated profits for the months of April, May and June of 1985.

As discussed in Division 4, the evidence would not authorize a finding that appellant Jordan's letter of April 1985 hindered appellees in obtaining a liquor license. Moreover, even assuming that appellant Jordan's acts had damaged appellees, appellees would not be entitled to recover lost anticipatory profits under the evidence which was adduced. Appellee Athan Prakas testified that appellees had intended to convert appellants' bar into a "family-type steak house" and the only evidence produced at trial as to the anticipated profits of the steak house was his testimony that he "wanted to make a couple of thousand dollars a month." "In the instant case, as the business was not 'an established business with clearly defined business experiences as

to profit and loss,' the loss of anticipated profits was clearly too speculative and remote to afford a basis for computation of damages and, in addition, the loss of such profits was not directly attributable to [the acts of appellants]. [Cits.]" *Charter Med. Mgt. Co. v. Ware Manor, Inc.*, 159 Ga. App. 378, 385-386 (6) (283 SE2d 330) (1981). Accordingly, the trial court's finding was erroneous.

6. Appellants enumerate as error the trial court's finding that they were not entitled to recover attorney's fees or interest on the two promissory notes which had been executed by appellee Athan Prakas.

In so finding, the trial court relied upon another of its findings, which was that appellants had failed to perform under the purchase agreement and had interfered with appellees' business operation. However, as discussed in the preceding divisions of this opinion, there is no evidence that appellants did not perform under the purchase agreement and no evidence that they interfered with appellees' operation of their business. Accordingly, the trial court's finding that appellants had thereby lost their entitlement to recovery of attorney's fees and interest on the notes is erroneous.

7. Appellants enumerate as error the trial court's finding that appellee Earnest Brookins had been released as a surety on the $50,000 promissory note.

The evidence is undisputed that appellee Brookins endorsed the note with the intention of guaranteeing payment thereon. The trial court found that he had been released as a surety on the note because appellant Jordan's removal of "substantial assets" had made payment of the note more difficult. However, as discussed in Division 2, no evidence was presented which would authorize the trial court to find that appellant Jordan had removed $10,000 worth of "substantial assets" from the premises. Accordingly, the trial court's finding as to appellee Brookins' release as surety is premised upon an erroneous finding and is, therefore, itself erroneous.

8. For the reasons discussed above, the findings of the trial court are clearly erroneous and the judgment based thereon must be reversed. " 'If the court's judgment is based upon a stated fact for which there is no evidence, it should be reversed.' [Cit.]" *Lamas v. Baldwin*, 140 Ga. App. 37, 39 (1) (230 SE2d 13) (1976). "We remand the case to the trial court with direction that it correct the finding[s] to conform to the evidence and then make a judgment with the corrected finding[s] taken into consideration. [Cit.]" *Chatham v. World Arts &c. Center*, 147 Ga. App. 421, 422-423 (249 SE2d 139) (1978).

*Judgment reversed and case remanded with direction. Banke, P. J., and Benham, J., concur.*

DECIDED MARCH 4, 1988.

*Jeffrey C. Hamling, Robert O. Fleming, Jr.,* for appellants.
*Richard W. Gerakitis,* for appellees.