A91A0742. RE/MAX OF GEORGIA, INC. et al. v. REAL ESTATE
GROUP ON PEACHTREE, INC.
A91A0743. HUDSON et al. v. REAL ESTATE GROUP ON
PEACHTREE, INC.
(412 SE2d 543)

SOGNIER, Chief Judge.

The Real Estate Group on Peachtree, Inc. d/b/a Re/Max on Peachtree (Peachtree), the assignee of a franchise agreement with Re/Max of Georgia, Inc., brought suit against Re/Max of Georgia; another franchisee, Re/Max Northeast, Inc. (Northeast); Northeast's president and licensed broker, Stacy L. Burton; and two of Northeast's licensed real estate agents, Starke Hudson and David Liles, alleging that Hudson and Liles, with the knowledge and approval of Burton and Northeast, had established a Re/Max real estate sales office within the territory granted exclusively to Peachtree in its franchise agreement and that Re/Max of Georgia had failed to defend and protect Peachtree from the infringement as required by the franchise agreement. A jury trial resulted in a verdict in favor of Peachtree. The appeals of Re/Max of Georgia, Northeast, and Burton (Case No. A91A0742) and Hudson and Liles (Case No. A91A0743) are consolidated here for review.

At trial, Leah Jennings, appellee's president and licensed broker, testified that she considered Hudson and Liles' office to be an infringement of her protected territory and brought it to the attention of Howard McPherson, president of Re/Max of Georgia, requesting that he enforce the protected territory provision of the agreement. McPherson visited the two offices and consulted with the chief legal officer of its parent organization, Re/Max International. Jennings testified that at a meeting McPherson arranged among all the parties McPherson described the Hudson-Liles office as a "blatant infringement." Jennings testified that Burton informed her at that meeting that if she forced Hudson and Liles to move their new office the loss of referral business from Hudson and Liles would cause him to lose six of his agents, and that Liles threatened to "bankrupt" her if she continued her complaints.

McPherson sought the help of the Broker/Owners Advisory Council in resolving the dispute, and after meeting with the council advised Burton by letter that it was his opinion and that of Re/Max International that the Hudson-Liles office was "an infringement upon the territorial rights [of appellee's] franchise agreement and a violation of your franchise agreement as well." In the letter, McPherson

gave Burton a date certain by which either the infringing office must be closed or the licenses of Hudson and Liles transferred to appellee. However, when Burton, Northeast, Hudson, and Liles advised McPherson that they would not comply the deadline was not enforced. Jennings testified that because agents realized they could work with Hudson and Liles without paying a fee to Re/Max, appellee had difficulty recruiting and keeping agents, which was the mainstay of her brokerage office's income. Eventually, appellee voluntarily ceased doing business because of financial problems.

1. The franchise agreement in issue granted to franchisees an exclusive license to use a particular system in the operation of a real estate agency within a certain exclusive territory. Re/Max of Georgia argues that because Hudson and Liles did not use that system in its entirety and did not call themselves a Re/Max office, their office within appellee's protected territory did not constitute an infringement of the franchise agreement, and thus the trial court erred by failing to grant its motion for a directed verdict on appellee's claim for breach of contract. We do not agree.

"In reviewing the overruling of a motion for a directed verdict, the proper standard to be utilized by the appellate court is the any evidence test." (Citations and punctuation omitted.) *Stratton Indus. v. Northwest Ga. Bank*, 191 Ga. App. 683, 685-686 (1) (382 SE2d 721) (1989). Viewing the evidence in a light most favorable to appellee, as required, id. at 686 (1), we find some evidence that although Hudson and Liles did not use the name "Re/Max," their office operated as a Re/Max office in fact, thereby infringing the franchise agreement. Appellee adduced evidence at trial that despite Hudson and Liles' assurances to Jennings to the contrary, they participated as agents in numerous residential real estate sales in the period during which their "construction" office was open within appellee's territory and that although their real estate licenses were held at Northeast, their real estate sales transactions were carried out at the newly established office. Testimony was adduced from other Re/Max franchisees that the right to have a "protected territory" was crucial to any franchisee; that the franchise would be virtually worthless without such a right; and that although the franchise agreement required Re/Max of Georgia to enforce the protected territory provision, McPherson was reluctant to do so because he feared liability to Burton, who had many agents and a large sales volume. This evidence sufficed to show the existence of a duty owed by Re/Max of Georgia and a breach of that duty in its failure to enforce the provision in that agreement granting appellee an exclusive territory. Accordingly, the trial court did not err by denying Re/Max of Georgia's motion for a directed verdict on this issue. See generally id.

2. Re/Max of Georgia also contends the trial court erred by deny-

ing its motion for a directed verdict as to damages for breach of contract because the measure of damages used by the court was incorrect. Re/Max of Georgia contends the trial court's reliance on *Pacific Mut. Life Ins. Co. v. Caraker*, 31 Ga. App. 707 (1) (121 SE 876) (1924) was erroneous and that appellee could not, as a matter of law, recover for expenses incurred in contemplation of its performance of the contract, but instead was only entitled to recover lost profits.

The parties cite no Georgia cases specifically setting forth the measure of damages for breach of a territorial covenant in a franchise agreement, and our research has uncovered none. Generally, "[d]amages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." OCGA § 13-6-2. " 'The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured, is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.' [Cits.]" *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 715 (165 SE2d 581) (1968).

The measure of damages used here, appellee's net expenses in attempting to comply with the contract — i.e., the expenses borne by appellee in its effort to meet its obligations under the franchise agreement less the income it derived from the contract — was expressly approved in *Pacific Mut. Life Ins.*, supra, as the measure of damages for the breach of a contract for personal services performed on a commission basis. Although the contract at issue here was not, strictly speaking, a contract for personal services, like the contract in *Pacific Mut. Life Ins.* it involved services which were not fungible and were compensated on a commission basis, and we find the trial court's use of this approach was not error in view of the provision in OCGA § 13-6-9 that "[a]ny necessary expense which one of two contracting parties incurs in complying with the contract may be recovered as damages." That is particularly true in this case because the injured party was a new business. Although lost profits may be recoverable where a business is well established and reasonable data exist for their ascertainment, the lost profits of a new business are generally too speculative for recovery, see *Levy, Brother & Co. v. Allen*, 53 Ga. App. 246-247 (185 SE 369) (1936), and restricting damages to lost profits in such a situation would leave appellee without a remedy. "The law always seeks to give a remedy commensurate with the injury. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." (Citations and punctuation omitted.) *Georgia Power &c. Co. v. Fruit*

*Growers Express Co.*, 55 Ga. App. 520, 526 (190 SE 669) (1937).

Given that evidence was adduced that breach of the exclusive territory provision would render the franchise worthless, we find no merit in Re/Max of Georgia's argument that breach of that provision constituted only a partial breach of contract. Similarly, our holding in Division 1, supra, that sufficient evidence existed to support the jury's verdict on the claim for breach of contract is also necessarily a finding that the breach was responsible for appellee's failure. Accordingly, we do not agree with Re/Max of Georgia that appellee's continued operation for some time in an effort to succeed after the breach deprives it of a remedy for its eventual failure.

Contrary to Re/Max of Georgia's argument, the leases on which appellee remained obligated were entered into in reliance upon the breached contract and were necessary obligations of a type that arise in the usual course of events within the contemplation of the parties, OCGA § 13-6-2, rendering the lease payments recoverable as damages under OCGA § 13-6-9. *Murray v. Americare-Medical Designs*, 123 Ga. App. 557, 559 (181 SE2d 871) (1971). Accordingly, the trial court did not err by denying Re/Max of Georgia's motion for a directed verdict as to damages for breach of contract.

3. Re/Max of Georgia enumerates as error the trial court's grant of appellee's motion in limine precluding admission of evidence regarding a prior order denying Re/Max of Georgia's motion for a temporary restraining order to force the closing of the Hudson-Liles office. The motion for TRO was heard before a different trial judge, who denied it on the basis that insufficient evidence had been presented to show that the Hudson-Liles office was, in fact, a Re/Max office. Given that appellee had no burden of proof at the hearing on the TRO, not being the movant, and that the judge denying the TRO noted that the movant (Re/Max of Georgia) had argued *against* its own motion, we find no error in the trial court's determination that introduction of the order denying the TRO because of insufficient evidence of infringement would be unnecessarily prejudicial to appellee in the trial of this case. See generally *Kelly Energy Systems v. Bd. of Commrs. of Clarke County*, 196 Ga. App. 519, 521 (3) (396 SE2d 498) (1990).

4. We do not agree with appellants Re/Max of Georgia, Northeast, and Burton that the evidence was too speculative to support the award of damages against them for tortious interference with business relations. Based on the number of sales associates appellee's franchise agreement required it to maintain, Jennings' testimony describing her efforts to recruit new agents and the negative effect the infringing office had on that recruitment, and evidence of the amounts appellee was entitled to receive from each sales associate recruited, the jury was able to calculate a definite amount of damages, and the $100,000

awarded by the jury on this claim was well within the range authorized. See generally *Summerfield v. Decinque*, 143 Ga. App. 351, 352-353 (2) (238 SE2d 712) (1977).

5. Appellants Northeast and Burton's requested charges on independent contractors were not adjusted to the facts of this case because they dealt with negligence law and vicarious liability, whereas this case involved intentional torts and the liability of Northeast and Burton was based on their own independent actions and not vicarious liability for the actions of Hudson and Liles. Accordingly, the trial court did not err by failing to give the requested charges on independent contractors. See *Travel Agency Group v. Henderson Mill Travel*, 193 Ga. App. 882, 885 (1) (389 SE2d 511) (1989).

6. As Hudson and Liles chose to be represented by the same counsel both at trial and on appeal, we do not agree with their contention on appeal that their interests were distinct, requiring a separate allocation of peremptory strikes. Rather, we find that the trial court did not abuse its discretion in the allocation of strikes among the defendants at trial, as Hudson and Liles were joint defendants at the time of trial, no motion for severance was made, and the transcript of the colloquy between the trial court and counsel on this issue reveals that the trial court's exercise of its discretion to allocate peremptory strikes equally among counsel for the various defendants was not made arbitrarily but in an effort to be fair to all five defendants. Compare *Keller Indus. v. Summers Roofing Co.*, 179 Ga. App. 288, 290 (1) (346 SE2d 99) (1986).

7. Hudson and Liles contend the trial court erred by denying their motion for a mistrial made after counsel for appellee violated the trial court's ruling on a motion in limine. The trial court's grant of the motion in limine at issue prohibited evidence regarding the decision reached by the Broker/Owners Advisory Council that in its opinion Hudson and Liles had infringed appellee's territory. The transcript reveals, however, that on cross-examination of a witness called by Re/Max of Georgia, counsel for Hudson and Liles opened the door to this matter, and given that the witness was not permitted to answer the offending question, we find no abuse of the trial court's discretion in its denial of Hudson and Liles' motion for a mistrial. See generally *Georgia Communications Corp. v. Horne*, 174 Ga. App. 69, 70 (4) (329 SE2d 192) (1985).

8. We have carefully reviewed the remaining enumerations of error in both appeals, and find them without merit.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 22, 1991 —
RECONSIDERATION DENIED NOVEMBER 13, 1991 —

*Palmer & Berman, Jeffrey N. Berman, William A. Wehunt*, for appellants (case no. A91A0742).

*Haley & Kaye, Arnold S. Kaye*, for appellants (case no. A91A0743).

*Branch, Pike, Ganz & O'Callaghan, Gregory J. Digel, Fletcher & McCurdy, William A. Fletcher, Jr., W. Phillip McCurdy III*, for appellee.