A93A1112. TOPVALCO, INC. v. GARNER.
(436 SE2d 25)

BEASLEY, Presiding Judge.

Topvalco sued Garner for $8,265.60 and other damages based upon Garner's default in rent and other charges due under a commer-

cial lease. Garner answered and filed a counterclaim alleging that Topvalco had violated the lease and damaged Garner in an undetermined amount by causing Garner's business to lose substantial profits.

Garner testified that she had been in the video rental business for over eight years. She opened stores in Hartwell (February 1984), Elberton (March), Toccoa (July), and a second in Toccoa (1985). The two Toccoa stores were later consolidated. All three stores were profitable, if not immediately then shortly thereafter, with Toccoa on top.

In 1987, Garner decided to open a video rental store in Athens. She was attracted to a Kroger shopping center called Westside Plaza, because it was on the Atlanta Highway, a major thoroughfare; she was aware of another video rental store in a Kroger shopping center which had been very successful; the Kroger in Westside Plaza was being converted to a Super Kroger; Athens was a university town comparable to Toccoa, which has several small colleges in surrounding areas, and she had enjoyed tremendous success with young people; there were high-density apartments as well as other residential areas and businesses nearby; and, prior to opening the Athens store, she went to other video stores in Athens, including those in the area of Westside Plaza, and determined she could fill a community need.

Garner and Topvalco entered into a three-year lease beginning April 1, 1988, at $700 per month for the first year, $750 per month for the second year, and $800 per month for the third year. It also called for $81 per month for common area maintenance. After entering into the lease, Garner closed the Hartwell and Elberton stores.

The Kroger did not have a video department, and Garner testified that she was told by the rental agent that the new Kroger would not have one either. However, it did, and although it was initially quite small, it was later expanded.

From the store's first day, there were problems with loitering and parking as a result of a video arcade called Video Rama which was also in the shopping center. It attracted a group of people who loitered in the parking lot, parked illegally, sat on their cars, played loud music, drank beer, and carried on, to the extent that Garner and her employees feared for their safety and customers were unable to park at her store. These disruptions occurred mainly on weekends when most revenues from video rentals are derived. The parking lot would be strewn with empty beer bottles and litter, typically all weekend. She called the police on probably 50 occasions, but they could do nothing unless they saw an underage youth actually drinking. The youth avoided detection. Garner called the realty agent 24 times and complained in writing.

The Video Rama ceased its operation in November 1989. The last three months Video Rama was there, the shopping center provided

security on Friday and Saturday nights. Garner testified that this kept the kids in their cars but provided a hostile environment because the security guards questioned anyone walking through the parking lot. Garner paid her rent and maintainance charges through April 1990 and vacated the premises on July 31.

Itemizing her expenses at the Athens store, Garner testified that her break-even point before paying herself a salary was roughly $4,300 per month, which was roughly comparable to the break-even point of her Toccoa store. Based upon all of the factors she testified to, she expected the Athens store to do as well.

Garner testified from her sales tax revenue records that the quarterly sales for her Athens store were $10,637, $16,226, and $13,856 in the second through the fourth quarters of 1988. They were $15,134, $11,518, $11,942, and $11,633 in the first through the fourth quarters of 1989. They were $14,284 and $11,557 in the first and second quarters of 1990, and they were $2,442 for July 1990. This totalled $119,259 over a 28-month period.

By comparison, the revenue sales from the Toccoa store were $30,803, $38,235, and $35,210 for the second through the fourth quarters of 1988. They were $39,888, $34,167, $43,154, and $40,155 for the first through the fourth quarters of 1989. They were $24,409 and $20,692 for the first and second quarters of 1990, and they were $8,146 for July 1990. This totalled $314,859 during the same 28-month period. She explained the drop in the first quarter 1990 revenues as resulting from the opening of a Blockbuster store.

Based on her experience, she testified that the reason she did not meet her expectations in Athens was mainly the security of the parking lot, although competition with the Kroger store contributed. She sought to recover lost income, rent paid, and approximately $11,500 expended by her for store improvements.

Garner's counterclaim was predicated on two grounds: (1) Topvalco breached the lease agreement by allowing Kroger to rent videotapes, contrary to an exclusive use clause in the lease and representations by the rental agent that this would not occur; and (2) Topvalco failed to provide adequate security, contrary to a covenant of quiet enjoyment. At the close of the evidence, Topvalco moved for directed verdict on Garner's counterclaim. The court denied the motion on the latter ground but granted it on the former.

Topvalco's claim for rent and Garner's counterclaim for damages were submitted to the jury, which returned a verdict in favor of Garner in the amount of $9,138.87 and against Topvalco. Judgment was entered accordingly.

1. Garner's motion to dismiss this appeal is denied. See *Honester v. Tinsley*, 183 Ga. App. 146, 147 (1) (358 SE2d 295) (1987); *Boatner v. Kandul*, 180 Ga. App. 234 (2) (348 SE2d 753) (1986).

2. Topvalco contends that the court erred in denying its motion for directed verdict based on Garner's waiver of the breach of the covenant of quiet enjoyment by remaining on the premises even though she had notice of the alleged breach since the inception of the lease.

Topvalco relies upon *Flair Fashions v. SW CR Eisenhower Drive*, 207 Ga. App. 78 (427 SE2d 56) (1993), and *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165, 169 (2) (400 SE2d 644) (1990). In each case, this Court held that, as a matter of law, the shopping center tenant had waived its claim that the landlord had breached the lease by not complaining until after being sued for non-payment of rent. In this case, the tenant continuously complained. She testified that she remained on the premises because she had sold two of her other stores in order to open the new one and had little choice but to try to make a go of it. Under these circumstances, whether the breach was waived was a jury question.

3. Topvalco contends that the trial court erred by allowing Garner to recover lost profits or revenues for a start-up venture with no track record of clearly defined business experience as to profit and loss.

"It is the general rule in this state, when the owner of a business seeks to recover lost profits, that recovery can be had only if the business has a proven 'track record' of profitability." *Stern's Gallery of Gifts v. Corporate Property Investors*, 176 Ga. App. 586, 592 (3) (337 SE2d 29) (1985). " 'A distinction is drawn between claims for profits derived from a new business venture and those derived from a going concern. The general rule is that evidence of expected profits from a new business is too speculative, uncertain, and remote to be considered, and does not meet the legal standard of reasonable certainty. Accordingly, recovery of lost profits is not generally allowed for injury to a new business with no history of profits.' [Cit.]" *Radlo of Ga. v. Little*, 129 Ga. App. 530, 534 (2) (199 SE2d 835) (1973).

The primary reason is that neither the revenues the new business would have generated nor the expenses it would have incurred but for the cessation of its operations due to the defendant's breach of contract or commission of a tort can be projected with reasonable certainty. See *Radlo of Ga. v. Little*, supra; see also *Re/Max of Ga. v. Real Estate Group on Peachtree*, 201 Ga. App. 787, 788 (2) (412 SE2d 543) (1991); *Palm Restaurant of Ga. v. Prakas*, 186 Ga. App. 223, 226 (5) (366 SE2d 826) (1988); *Stern's Gallery*, supra; *Molly Pitcher Canning Co. v. Central of Ga. R. Co.*, 149 Ga. App. 5, 10 (4) (253 SE2d 392) (1979); compare *Bennett v. Smith*, 245 Ga. 725 (267 SE2d 19) (1980); *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 738 (3) (320 SE2d 863) (1984); *Kitchens v. Lowe*, 139 Ga. App. 526, 529 (3) (228 SE2d 923) (1976).

Here, like *Bennett* and unlike *Radlo of Ga.*, Garner proved reve-

nues actually generated and expenses actually incurred. But it is a new business venture, and she had the difficult burden of proving that Topvalco was the cause of the new business' failure to generate revenues. " 'The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages . . .' [Cits.]" *Molly Pitcher*, supra, 149 Ga. App. at 11. "[T]he losses must be directly traceable to the acts of the other party. [Cit.]" *Grossberg v. Judson Gilmore Assoc.*, 196 Ga. App. 107, 109 (2) (395 SE2d 592) (1990). Garner did not carry this burden, if for no other reason than that after Video Rama left the shopping center and the breach of the covenant of quiet enjoyment had ended, Garner's revenues did not exceed those generated during the breach.

Garner's failure to meet her revenue expectations at the Athens store may have been caused by Kroger's competition, among other causes. The trial court ruled that such competition did not violate the lease, and Garner has not cross-appealed from this ruling. However, she also sought to recover the cost of improvements she made to the store in addition to lost profits or revenues, and Topvalco has not enumerated error on the submission of this issue to the jury. Since it appears that at least part of the verdict awards Garner damages for lost profits or revenues, and since this part of the verdict is not separable from the rest, the judgment on the counterclaim must be reversed. See *Co-op Cab Co. v. Arnold*, 106 Ga. App. 160, 165 (126 SE2d 689) (1962). The judgment on the complaint is affirmed.

*Judgment affirmed in part and reversed in part. Cooper and Smith, JJ., concur.*

DECIDED SEPTEMBER 2, 1993 —
RECONSIDERATION DENIED SEPTEMBER 23, 1993.

*W. Glover Housman, Jr.*, for appellant.
*Heard, Leverett & Phelps, R. Chris Phelps*, for appellee.