A93A1994. DOUGLAS & LOMASON COMPANY v. HALL.
(441 SE2d 870)

ANDREWS, Judge.

Douglas & Lomason Company appeals from the trial court's denial of its motion for j.n.o.v. after entry of judgment on the jury's verdict for Hall of $192,954.63 for breach of contract, $3,788.74 for fraud, and $100,000 in punitive damages.

1. The first two enumerations deal with the denial of the motion for directed verdict of Douglas & Lomason Company (Company) and are considered together.

" 'In reviewing the overruling of a motion for a directed verdict, the proper standard to be utilized by the appellate court is the any evidence test.' [Cit.]" *Re/Max v. Real Estate Group*, 201 Ga. App. 787, 788 (1) (412 SE2d 543) (1991). Applying this test and viewing the evidence in favor of Hall, id., it showed the following.

Douglas & Lomason Company, through its Centennial Industries Division (Company), manufactured custom beverage truck bodies in Columbus, Georgia. Hall was hired by the Company in 1968 and worked as an employee for a number of years. In 1982, Hall became one of the independent sales representatives working for the company pursuant to contract. Hall and Bennett, the manager of the company, signed a "Sales Representative Agreement" on January 25, 1982, effective February 1.

That agreement provided, inter alia, that Hall was the representative for Alabama, Mississippi, Tennessee, the panhandle area of Florida west of Route 231 all the way to the Alabama line, and a portion of Georgia which did not include Columbus and Phenix City, Alabama. Further, it provided that "A. On sales to buyers initiated by Representative and ordered in his territory, the following shall be

payable: 1. 6½% per cent gross sales commission will be paid to the Representative on beverage truck bodies and trailers manufactured by Centennial Industries. 2. Commissions will be paid on the net invoice price to user after all discounts, freight, and taxes have been deducted. B. On sales of multiple units or systems involving combinations of units, where the company is required to make competitive bid, at deviation from its normal list prices, or custom built items, the commissions will vary from the above as appropriate to the circumstances of such sale. The Representative will be advised at the time bid is made by the Company of the commission to be payable and under no circumstances will a bid be offered by Company allowing less than 4% commission without prior consultation with Representative." Commissions were payable monthly.

The contract was for an initial six-month term "and will automatically renew itself from year to year unless otherwise terminated by either party, with or without cause, upon 45 days' notice in writing. . . ." On March 5, 1990, after a new sales manager requested that all representatives sign a new contract and Hall refused, a written notice of termination of the 1982 contract was sent.

Bennett was responsible for most of the wording of the agreement and the initial establishment of the territories serviced by the representatives. The representatives were provided with business cards reflecting an 800 number for their use in contacting the Columbus main office if they were unable to reach their representative. According to Bennett, on sales originated by a call to this number, it was the policy of the Company to pay the representative a commission if the customer was in his assigned territory.

Hall claimed that the Company breached the contract by removing areas from his territory, the Florida panhandle in October 1982 and Mississippi in 1986, and by repeatedly reducing his commission rate below that provided in the agreement. Suit was filed on August 3, 1990.

The errors alleged are that the court erred in denying the Company's motion for directed verdict and j.n.o.v. based on OCGA § 9-3-24 on the claims arising from the 1982 territorial realignment and November 1983 reduction of standard commission from six-and-one-half percent to six percent. These are considered together.

OCGA § 9-3-24 provides that actions on simple contracts in writing "shall be brought within six years after the same become due and payable." The Company contends that, since the removal of Florida and portions of Georgia from Hall's territory occurred in 1982 and the rate reduction in 1983, he may not pursue any damages for sales made in that territory or for the rate difference, even for sales made within six years prior to suit. If the contract is divisible under OCGA

§ 13-1-8, as argued by Hall, appellant's argument fails.[1]

"In *Beck v. Thompson & Taylor Spice Co.*, 108 Ga. 242 (33 SE 894), the Supreme Court stated, 'It is a well-settled principle of law, that where a contract of employment is broken by one of the parties, the other party acquires or may acquire three distinct rights: 1st. He may bring an action immediately to recover for any special injury which he may have sustained in consequence of the breach. . . . 2d. He may wait until the termination of the period for which he was employed, and sue upon the contract and recover his whole wages. 3d. He may treat the contract as rescinded. . . .'" *Piedmont Life Ins. Co. v. Bell*, 103 Ga. App. 225, 234 (3) (119 SE2d 63) (1961). See *Rosenstock v. Congregation Agudath Achim*, 118 Ga. App. 443, 444 (164 SE2d 283) (1968).

When the statute of limitation begins to run depends on whether the contract is entire or divisible. "If the contract is found to be strictly divisible, the statute will run separately as to each payment or performance when it becomes due. . . . [C]ontracts of service for a specified term are held severable when the wages or salary [or commissions] can be construed as payable at specified shorter periods." *Piedmont Life*, supra at 235. *Cahoon v. Kubatzky*, 138 Ga. App. 393, 396 (1) (226 SE2d 467) (1976).

Here, no commission was due until the unit was sold, manufactured, and delivered. As to all delivered units, commission was paid on a monthly basis. While the unilateral change in territories was made in 1982 and the rate change in November 1983, Hall was due no commission in the removed territories until a sale was consummated. Hall properly made no claims for commissions accruing before 1984, six years before suit, as these were barred by OCGA § 9-3-24. As to sales within the six-year period, however, claims for commissions from these territories and for the rate differential were not barred by that section. Id.; *Rosenstock*, supra.

Therefore, it was not error to deny the motions for directed verdict and j.n.o.v. on this ground.

2. The third enumeration is that the court erred in admitting evidence permitting the jury to calculate Hall's damages for the lost sales commissions in the reassigned territories by considering the actual commissions earned by the new representatives.

---

[1] The Company acknowledges that no written amendment was ever made to Hall's contract effecting these changes and that the Company's 1985 procedures manual stated that six percent was the standard commission "unless specified otherwise." The chief financial officer testified that the Company felt that, because Hall accepted his monthly commission check and cashed it without writing "under protest" on the endorsement, "he was effectively agreeing to the arrangement that we had." Such an argument of mutual departure, even if applicable, was a jury question. *Kusuma v. Metametrix*, 191 Ga. App. 255, 256 (3) (381 SE2d 322) (1989).

Appellant Company has not referenced any particular exhibits in the enumeration of error as objectionable. Rule 15 (c) (3) (ii). The transcript references in the enumeration and the discussion in the argument section, which contains no record or transcript references, Rule 15 (3) (i) and (ii), specify only Exhibits 35 and 36,[2] and this is all we consider.

The only objections voiced when Exhibit 35 was tendered was that it was irrelevant and that it involved changes made beyond the statute of limitation. This latter argument has been resolved by Division 1, supra.

Exhibit 35 was a volume of new bookings reports for the territories removed from Hall's area. These reflected the sales actually made by the representatives to whom Hall's territories had been reassigned for the years 1984 through his termination. The objection voiced, based on *Tifton Brick &c. v. Meadow*, 92 Ga. App. 328, 332 (3) (88 SE2d 569) (1955), was that this information was irrelevant to show what Hall's sales would have been in those territories had he been the one calling on the customers and prospecting the sales because the sales were made by other salesmen. *Tifton*, however, does not hold that the only evidence relevant to prove lost earnings is that reflecting the past sales of the plaintiff. Instead, it concludes that such evidence may be used for that purpose.

Evidence of the actual commissions earned in Hall's former territory was relevant to prove his claim for contract damages. OCGA §§ 24-2-1; 13-6-2; see *Topvalco, Inc. v. Garner*, 210 Ga. App. 358, 361 (3) (436 SE2d 25) (1993); *Re/Max*, supra at 789 (2).

3. In the fourth enumeration, the Company contends the court erred in "permitting" the fraud claim asserted in Hall's third count. That count alleged fraudulent concealment of sales made by call-ins or other representatives in Hall's territories.

A motion for directed verdict was made concerning the fraud count. The argument made here, however, was not part of that motion and will not be considered here. *Ga. Ports Auth. v. Southeast Atlantic &c.*, 202 Ga. App. 318, 322 (3) (414 SE2d 232) (1991); *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (2) (360 SE2d 418) (1987).

4. Finally, the Company contends that the award of $100,000 in punitive damages was excessive.

There was no specific motion for directed verdict made on the submission of the issue of punitive damages to the jury other than the motion contending that the fraud count should not be submitted to

---

[2] Although Exhibit 35 is contained in the record, there is no document marked Exhibit 36, nor does the transcript reflect that it was ever admitted. Therefore, there is nothing to review in this regard.

the jury.

We cannot say that the amount of punitive damages is excessive as a matter of law. See *Clarke v. Cotton*, 207 Ga. App. 883 (1) (429 SE2d 291) (1993).

*Judgment affirmed. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED MARCH 1, 1994 —
RECONSIDERATION DENIED MARCH 17, 1994 — 

*Smith, Currie & Hancock, Paul R. Beshears, Daniel F. Dupre,* for appellant.

*Worthington & Flournoy, Samuel W. Worthington III,* for appellee.