A94A0619. AMBERLEY SUITE HOTEL v. SOTO.
(446 SE2d 778)

BEASLEY, Presiding Judge.

Amberley Suite Hotel appeals from the jury verdict and judgment in favor of Soto on his negligence claim, enumerating as error the denial of its motion for directed verdict and the court's failure to give portions of two requested jury charges.

1. " 'In reviewing the overruling of a motion for a directed verdict, the proper standard to be utilized by the appellate court is the

any evidence test.' . . . [Cit.]" *Re/Max of Ga. v. Real Estate Group on Peachtree*, 201 Ga. App. 787, 788 (1) (412 SE2d 543) (1991). Viewing the evidence in favor of Soto, it showed the following.

Soto was employed as a security guard and, beginning in October 1989, he was assigned to the Amberley Suite Hotel, where he worked the 11:00 p.m. to 7:00 a.m. shift. His duties included patrolling the premises and completing an "Officer's Daily Activity Report" which recited his patrol activities, including any items which might need the attention of the hotel's maintenance staff. His report would be turned in at the end of each shift to Argot, the night auditor. She then gave the reports to the general manager for whatever action was required.

In December, Soto orally reported to Argot a water leak in the third floor corridor of Building # 1. On February 9, 1990, Soto's report included a notation at 6:46 a.m. that he had checked the corridors and "found several leaks in ceiling on level 3 corridors of Building # 1."

On March 16, 1990, after his initial inspection round at 10:52 p.m., Soto advised both Argot and Thompson, the night manager, that he again noticed a leak in the third floor corridor of Building # 1. Someone had placed a bucket under it to catch falling water, which was leaking through a hole approximately the size of a dime. Thompson told Soto that as long as the leak did not affect hotel guests, he should not worry about it. Argot, who also handled guest registration, was told not to place anyone in rooms in that area. Thompson did tell Soto to "[j]ust make sure the bucket does not overflow."

At 3:45 a.m. on March 17, Soto noticed that the bucket was full and, as directed by Thompson, he emptied it by dumping it off the third floor breezeway. As he was returning the bucket to its position, he noticed a slight bulge in the ceiling. He bent over to put the bucket down, a door slammed, and a portion of the ceiling fell onto his neck, shoulders, and back. He reported the incident to Argot, who described him as drenched in water, covered with white particles, and looking faint. The incident was noted in both Soto's and Argot's written reports. Argot inspected the area and noted a missing piece of sheetrock and ceiling about the size of a dinner plate.

The engineer of the hotel testified that he attempted to fix the leak one week before the accident and that there were obvious stains on the ceiling indicating a water leak. He also testified that he had replaced the roof in the same area on another occasion because it was beginning to sag due to a leak.

An experienced sheetrock contractor testified that when sheetrock gets wet over a period of time, it will discolor and eventually fall or pull away from the ceiling due to the saturation and weight of the water. Sometimes it will form a pocket containing liquid. He had seen

fallen chunks as big as four feet and the size would depend on how much liquid accumulated in the ceiling.

Soto testified that he had no experience in the handling of sheetrock or in the construction of sheetrock. All he knew was that there was a bulge in the sheetrock and a hole about the size of a dime in the ceiling.

Although Soto completed his shift after the incident, Argot insisted he go to the emergency room and took him. He was x-rayed and, although released, he missed a period of work because of the soft tissue damage. He was treated by several doctors, physical therapists, a chiropractor and, because of chronic pain, a psychologist.

" ' "The decisive issues are: '(1) fault on the part of [Amberley], and (2) *ignorance of the danger on the part of [Soto].*' " ' (Emphasis supplied; citations omitted.) [Cit.]" *Biggs v. Long*, 212 Ga. App. 195, 201-202 (4b) (441 SE2d 677) (1994).

It is undisputed that Soto had knowledge of the leak and the bulge. This court has recognized " 'that "knowledge of the defect" does not necessarily equal "knowledge of the danger," (cit.), "(t)he crucial question is whether (appellant) should have had a full appreciation of the danger, and in the exercise of ordinary care [he] should have avoided the injury to [himself]. . . . (Cits.)". . . (Cit.)' [Cit.]" *Dunn v. Gourmet of Macon*, 207 Ga. App. 826, 828 (429 SE2d 282) (1993). The conclusion as a matter of law that Soto appreciated the danger of the ceiling falling and injuring him simply because he saw the bulge is unwarranted.

In *Atkinson v. Kirchoff Enterprises*, 181 Ga. App. 139 (351 SE2d 477) (1986), plaintiff entered the store to purchase an item and noticed that the store was being remodeled. She exited, intending to walk to another nearby store but found the sidewalk blocked by construction debris placed there by defendant. Atkinson attempted to try to traverse the debris because the only other route available was to walk out onto the street which was heavily trafficked. She stated that she knew she would have to be careful but nevertheless slipped and fell on a sharp object which was in the debris. The trial court granted summary judgment concluding that Atkinson had equal knowledge of the hazardous condition. This court reversed. Id. at 140.

The plurality concluded that Atkinson was well aware of the construction debris and the need to be careful in traversing it. It stated, however, that "it does not follow that she was fully aware, as a matter of law, of the full extent of the danger involved in doing so. It has repeatedly been held that 'mere knowledge' of the existence of a dangerous or defective condition does not necessarily constitute 'full appreciation of the risk involved.' [Cits.]" Id. It concluded that the evidence did not establish that Atkinson's knowledge of the danger was equal to or superior to that of defendant and that the determination

should be made by the jury. The special concurrence focused on the choice of two alternative theories, with respect to the exercise of ordinary care, rather than whether Atkinson had equal or superior knowledge of the danger. Id. at 140-141.

In *Robinson v. Western Intl. Hotels*, 170 Ga. App. 812 (1) (318 SE2d 235) (1984), a man parked his car in the valet parking provided by the hotel he was staying in. The valet clerk misplaced his keys and asked him if he would come to the valet booth and identify them. Id. The man followed the valet clerk into an "employees only" area of the garage and stepped into the booth after negotiating an unusually high step. Id. Upon exiting the booth, the man missed the step and fell forward onto the pavement. Id. He sued the hotel and the trial court granted summary judgment in favor of the hotel. This court reversed because "the issue is whether Mr. Robinson was aware of the danger inherent in the conditions surrounding the booth, not merely whether he was aware of the existence of the conditions themselves." Id. at 814. It was held that " '[w]e cannot say that under these circumstances that a conclusion, as a matter of law, is demanded that the plaintiff should have had a full appreciation of the danger, and that in the exercise of ordinary care (he) should have avoided the injury to (himself). This, we think is a question for the jury.' *Firestone Service Stores v. Gillen*, [58 Ga. App. 782, 787 (199 SE 853) (1938)]. See also *Scott v. Rich's*, 47 Ga. App. 548 (171 SE 201) (1933)." Id. at 815. See also *Goldsmith v. Hazelwood*, 93 Ga. App. 466, 469 (92 SE2d 48) (1956); *Pippins v. Breman*, 152 Ga. App. 226, 228 (262 SE2d 477) (1979); *Gerdes v. Dziewinski*, 182 Ga. App. 764, 766 (2) (357 SE2d 110) (1987). These cases distinguish between "knowledge of the condition" and "knowledge of the danger."

Here, the evidence is that the hotel had at least constructive knowledge of the leak. In addition, the testimony of the engineer indicates that the hotel had constructive knowledge that such a leak could saturate the ceiling. Under *Atkinson* and *Robinson*, the fact that Soto saw the bulge in the ceiling is not the crucial question in determining liability but rather whether he appreciated the danger. Soto testified that he had no prior experience with sheetrock or any other roofing material. The hotel engineer testified that he attempted to repair the ceiling less than a week before it collapsed. Only the hotel was in a position to examine any structural weaknesses in the ceiling which could cause it to collapse, as well as to determine the magnitude of the problem and the consequences of failing to remedy it. Soto was a security guard, not a maintenance man. Further, the record does not indicate whether the bulge in the ceiling had suddenly appeared immediately prior to collapse of the ceiling, or if it had been there all night and suddenly fell. The trial court concluded that whether Soto knew of the danger and fully appreciated it were

questions for the jury to determine. The record does not establish that Soto's knowledge that the ceiling could fall was equal to or superior to that of the hotel. There was evidence to support the denial of a directed verdict.

2. Appellant has shown no reversible error with respect to the two jury charges enumerated.

*Judgment affirmed. Pope, C. J., McMurray, P. J., Johnson, Blackburn, Smith, JJ., and Senior Appellate Judge Harold R. Banke concur. Birdsong, P. J., and Andrews, J., dissent.*

ANDREWS, Judge, dissenting.

The basis for imposing liability on the hotel is the rule that a proprietor's liability must be premised on his superior knowledge of a dangerous condition or hazard that was the proximate cause of the invitee's injury. See *Bunch v. Stanton*, 174 Ga. App. 233, 235 (329 SE2d 538) (1985), rev'd on other grounds, *Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821, 824 (415 SE2d 654) (1992); *Coates v. Mulji Motor Inn*, 178 Ga. App. 208, 210 (342 SE2d 488) (1986).

The hotel knew there was a leak in the ceiling because Soto reported it. The hotel did not know, as did Soto, that the leak had produced a bulge in the wet sheetrock ceiling "the size of a basketball." The dangerous condition or hazard was not the leak but rather the basketball-sized defect created in the wet ceiling, and one does not have to be an expert in sheetrock to know that such a defect will ultimately fall.

Inasmuch as the majority opinion is contrary to the law of this State and the law of gravity, I must respectfully dissent.

I am authorized to state that Presiding Judge Birdsong joins in this dissent.

DECIDED JULY 15, 1994.

*Jenkins & Eells, Frank E. Jenkins III*, for appellant.
*Blank & Associates, A. Russell Blank*, for appellee.