A95A1634. FOOD LION, INC. v. WILLIAMS.
(464 SE2d 913)

McMURRAY, Presiding Judge.

Plaintiff Ollie Mae Williams brought this tort action seeking to recover for personal injuries sustained when she slipped and fell in the public rest room of a grocery store owned and operated by defendant Food Lion, Inc., in Savannah, Georgia. The evidence showed that the floor of this rest room was covered with water from a commode. In a special verdict, the jury found for plaintiff, awarding her $4,317.98 for past medical expenses, $25,920 in past lost wages, $6,000 for past, present and future pain and suffering, $10,500 for future medical expenses, and $55,000 for future lost wages. Defendant appeals directly from the judgment entered on that special verdict. *Held*:

1. Defendant first enumerates the denial of its motion for directed verdict on the issue of liability, arguing that it could not have

superior knowledge of the hazardous spill because its employee "became aware of the water on the floor only *moments* before [plaintiff] entered the bathroom." (Emphasis in original.) "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all favorable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). "In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the 'any evidence' test. [Cit.]" *Southern R. Co. v. Lawson*, 256 Ga. 798, 799-800 (1) (a) (353 SE2d 491).

The evidence in the case sub judice, when reviewed in the light most favorable to the party opposing the motion for directed verdict, indisputably establishes that defendant's employee, Elizabeth Kirkland, was in the rest room before plaintiff entered. Elizabeth Kirkland admitted her actual knowledge of a large amount of water on the floor, " 'enough water there to indicate that it could have covered that area from the commode to the door.' " Elizabeth Kirkland was a reluctant witness, whose recollection at trial, especially her estimates of time, was constantly refreshed with her deposition testimony. She thought this water came from the first of two commodes because she knew it had overflowed several times before. Elizabeth Kirkland passed this first stall when she used the second. She was trained to pick up things from the floor or else summon someone else to clean up the floor. The assistant store manager, Jasper King, confirmed that a mop room, containing warning signs, was "right down from the bathrooms." Douglas Joseph Gertsweiler, the store manager, conceded that the existence of a store "policy of inspecting every four hours does not necessarily mean that the actual inspections were, in fact, done every four hours." He also confirmed that store policy with respect to water spilled on the floor is that "the store employee is supposed to place themselves in a location so as to block access by customers to any area where there is a spill." When plaintiff entered the rest room, "Ms. Kirkland didn't say anything. She didn't utter a word." Nor "did she try to block the door to prevent [plaintiff] from coming in."

The favorable estimate of the time elapsed from when she discovered the water on the floor and when plaintiff entered the rest room, took one step and fell to the floor on her back, was at least "a minute or two. [She did not] think it was like five or ten, fifteen minutes." Contrary to the *un*favorable testimony relied upon by the defendant and the dissent, Elizabeth Kirkland "*stood there and looked at it* and [although she] wanted to go get someone to clean it up, or find someone who could clean it up, . . . before [she] got to the door to get someone, Mrs. Williams had opened the door and she came in at an

angle, and before [Elizabeth Kirkland] could tell her not to come in, she slipped down." (Emphasis supplied.) This conflicting testimony as to the exact amount of time Elizabeth Kirkland had to stand and look at the large accumulation of water on the floor created a jury question as to Elizabeth Kirkland's credibility and whether she was diligent or dilatory in using such time as she had to prevent just the type of injury sustained by plaintiff in this case. It was not necessary that defendant's employee have sufficient time to *remove* the accumulated water; she could have simply stood in the doorway and warned patrons of the hazard as she contemplated the best path to a complete remedy or summoned help. That response is defendant's policy. Consequently, the defendant and the dissent err in relying on cases such as *Mitchell v. Food Giant*, 176 Ga. App. 705, 708 (337 SE2d 353). In *Mitchell*, the hazardous condition was a "radish on the floor of [defendant's] grocery store." Id. Undoubtedly, that hazardous radish could have been completely removed by stooping to pick it up. That remedy simply is not available to address a floor covered with water from an overflowing commode. The case sub judice falls within the general rule that " ' "(q)uestions of negligence, diligence, contributory negligence, and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases." ' *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448 (224 SE2d 25). Added to that list are related issues of assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in failing to foresee a condition which could cause injury (*Cowart v. Five Star Mobile Homes*, 161 Ga. App. 278, 279 (291 SE2d 13)), and *even where there is no dispute as to the facts, it is usually for the jury to say whether the conduct in question met the standard of the reasonable man.* [(Emphasis supplied.)] *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274)[, applying the whole court decision of *Wakefield v. A. R. Winter Company, Inc.*, 121 Ga. App. 259, 260 (174 SE2d 178)]. ' "Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication." ' *Epps Air Svc. v. DeKalb County*, 147 Ga. App. 195, 196 (248 SE2d 300)." *Cunningham v. Nat. Svc. Indus.*, 174 Ga. App. 832, 836 (331 SE2d 899). The evidence in the case sub judice supports the reasonable inference that defendant's employee did not act with dispatch to warn patrons when she confronted a known and obvious hazard, as required by store policy. Consequently, the trial court correctly denied defendant's motion for directed verdict as to liability.

2. Defendant next enumerates the denial of its motion for a partial directed verdict as to future medical expenses as an item of recoverable damages. Defendant acknowledges that plaintiff's treating neurosurgeon, James G. Lindley, M. D., testified that an uncomplicated

two-day hospitalization for a discetomy [sic] with fusion would cost "probably about $20,000." This is sufficient evidence to authorize the jury's award in the amount of $10,500 for future medical expenses. See generally *Massie v. Ross*, 211 Ga. App. 354 (1), 355 (439 SE2d 3). Nevertheless, defendant argues in its brief that no award is authorized because there was no evidence "from any medical provider that [plaintiff] needed surgery on her neck." We disagree.

While Dr. Lindley testified that plaintiff's leg, low back, and thoracic pain were, in his medical opinion, susceptible to nearly complete remedy by physical therapy, he was further of the opinion that plaintiff's neck "condition was becoming chronic. . . ." He testified that plaintiff's "neck problem may get worse, and that's generally because . . . there is a disc abnormality, [. . . which is] more likely to develop more arthritis. . . ." Subsequent examination, after physical therapy, showed that "the prognosis from the thoracic pain and low back and left leg pain was very good, and that she would probably improve and that would go away. . . . From the neck and right arm pain, [however,] she certainly continued to have symptoms and [even] if she did improve, there's still a chance of re-injury." Plaintiff "might even need surgery on her neck if she continued to have neck problems." Specifically, if plaintiff "continued to demonstrate abnormalities such as a Spurling sign, then [Dr. Lindley] would recommend surgery."

"In all cases, necessary expenses consequent upon an injury are a legitimate item in the estimate of damages." OCGA § 51-12-7. Since Dr. Lindley had already testified that plaintiff's neck pain was chronic, i.e., continuing, and was susceptible to reinjury, and that he would recommend surgery if plaintiff failed to improve through physical therapy alone, the jury in the case sub judice was not left to determine the need for future surgery based on speculation and conjecture alone. *Bennett v. Haley*, 132 Ga. App. 512, 514 (1) (208 SE2d 302). Compare *Daugherty v. Vick*, 127 Ga. App. 767, 769 (3) (195 SE2d 208). The trial court correctly denied defendant's motion for partial directed verdict as to this special item in the estimate of damages.

3. In the final enumeration, defendant contends the trial court erred in its charge on pain and suffering. The trial court instructed the jury that, "in evaluating the plaintiff's mental pain and suffering, you may consider the following factors: Interference with normal living, interference with enjoyment of life, loss of capacity to labor and earn money, impairment of bodily health and vigor, the fear of extent of injury, shock of impact, actual pain and suffering, past and future, mental anguish, past and future, must limit activities." On appeal, defendant argues that these factors are suitable only for closing argument and are not the basis of a proper jury instruction. This contention is without merit. The trial court's charge in the case sub judice substantially tracked the pattern charge on damages, including

mental pain and suffering, and was a correct statement of the law. See Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. I: Civil Cases, Section XI (7) (b) (3rd ed. 1991). The itemization of these permissible factors by the trial court was not itself argumentative or unduly suggestive. If counsel believed that certain factors were unsupported by the evidence, that circumstance was a matter for reply in closing argument. See *CSX Transp. v. Darling*, 189 Ga. App. 719, 723 (3) (377 SE2d 217). Consequently, the trial court did not err in its instruction to the jury on mental pain and suffering as an element of recoverable damages.

*Judgment affirmed. Beasley, C. J., Pope, P. J., Johnson, Blackburn, Smith and Ruffin, JJ., concur. Birdsong, P. J., concurs in the judgment only. Andrews, J., dissents.*

ANDREWS, Judge, dissenting.

Because I find that Williams cannot prove an essential element of her cause of action, namely, that an employee had an opportunity to remove the water or to warn customers of the hazard, I must respectfully dissent.

" ' "In reviewing the overruling of a motion for a directed verdict, the proper standard to be utilized by the appellate court is the any evidence test." ' " *Amberley Suite Hotel v. Soto*, 214 Ga. App. 72, 73 (446 SE2d 778) (1994) (quoting *Re/Max of Ga. v. Real Estate Group on Peachtree*, 201 Ga. App. 787, 788 (412 SE2d 543) (1991). Viewed in the light most favorable to Williams, the party opposing the motion, the evidence was as follows.

On February 28, 1992, at approximately 6:50 p.m., Williams slipped and fell as she was entering the ladies' room in the Food Lion store. Water from an overflowing toilet caused the fall. A store cashier, Ms. Kirkland, was in the rest room when Williams entered. Kirkland testified that she had just come out of one of the stalls when she noticed the water on the floor. Kirkland said that she discovered the water a minute or two before Williams entered and she was leaving the rest room to take care of the problem when Williams opened the door. Kirkland further testified that she tried to warn Williams but Williams slipped and fell before she could do so.

" ' "For [Williams] to recover under a common law negligence theory, there must have been a defective condition on [Food Lion's] premises, which defect was the cause of [Williams'] fall and of which [Food Lion] had superior knowledge." ' " *Froman v. George L. Smith, Ga. World Congress Auth.*, 197 Ga. App. 338, 339 (398 SE2d 413) (1990).

Williams claims that Food Lion had actual knowledge of the hazard and failed to warn her of the dangerous condition. However, Kirkland's uncontroverted testimony was that she had discovered the

water only a minute or two before Williams entered.

"Q. Now, do you recall how long it had been from the time you noticed the water on the floor until the time Mrs. Williams entered the restroom? A. It could have been about a minute. It wasn't really longer than that. I didn't really have time to stand there and look at it before she came in."

"[T]here never has been a rule in this state that liability can be shown by nothing more than the fact that the defendant's employee was in the immediate area of the hazardous substance. In every case, the rule that states that proposition also requires a finding that the defendant's employee 'had an opportunity to discover and *remove* the hazard,' . . ." (Emphasis supplied.) *Mitchell v. Food Giant*, 176 Ga. App. 705, 709 (337 SE2d 353) (1985). Accordingly, although Kirkland was aware of the water on the floor, Williams cannot show that she had an opportunity to clean it up or warn anyone of the hazard. Indeed, Kirkland testified that as she was leaving to get someone to clean up the water, Williams opened the door. Further, before Kirkland could stop her, Williams entered and fell. Thus, although Williams has shown that, at the moment of her fall, a Food Lion employee had knowledge of the water on the floor, she cannot show that the employee had an opportunity to remove the water or warn customers of the hazard. Therefore, because Williams failed to establish one of the essential elements of her cause of action, I believe the trial court erred when it overruled Food Lion's motion for directed verdict on the issue of liability.

DECIDED DECEMBER 5, 1995.

*Painter, Ratterree & Bart, R. Clay Ratterree, Sarah B. Akins*, for appellant.

*Jones, Boykin & Associates, Noble L. Boykin, Jr., Charles W. Snyder*, for appellee.