## ANGLIN v. CITY OF COLUMBUS.

</div>

1. In an action for damages for personal injuries, as a general rule, the amount of damages is a question for the jury. But if the evidence authorizes a recovery by the plaintiff, and the verdict finding in favor of the plaintiff's right to recover fixes such a small amount of damages as will justify the inference of gross mistake or undue bias, a new trial should be granted.

2. Under the evidence submitted in this case, a verdict in favor of the plaintiff for $100 was so small as to require, under the rule above stated, the grant of a new trial.

<div align="center">Argued May 21,—Decided June 13, 1907.</div>

Action for damages. Before Judge Little. Muscogee superior court. March 24, 1906.

This was an action by the plaintiff against a municipal corporation, for damages alleged to have resulted from the fall of a shed constructed over the sidewalk in front of the house and place of business of the plaintiff's husband. A statement of facts will be

found in the report of the case when it was before this court on another occasion. *City of Columbus* v. *Anglin,* 120 ·Ga. 785. On the last trial the jury returned a verdict for the plaintiff, for $100. A motion was made for a new trial upon the general grounds and upon the further ground that the verdict is "so manifestly against the evidence·and so small that it justifies the inference of gross mistake or undue bias in the jury against the plaintiff .and her cause of action, and a bias and partiality in favor of the defendant." The court overruled the motion, and the plaintiff excepted. On the argument before this court counsel for the plaintiff in error relied only upon the ground quoted above, for a reversal of the judgment of the court below. With reference to the manner in which the injury occurred, and its extent, the evidence was uncontradicted, and was to the effect that the plaintiff, a married woman 37 years of age, had been sitting under the shed in question and had risen to go into the front door of the house. As she started into the door the collapse occurred. She was not quite beyond the reach of the edge of the shed, which rested against the house, and was grazed down the shoulders and back from the neck all the way to the waist. She was confined to bed, perfectly helpless, for about two months, and still suffers, being confined to bed about half the time. A great "liver-looking" place formed on her back, and had to be opened every morning by the doctor and washed out, which caused intense suffering. The doctor testified that on the fourth or fifth day an enormous clot formed on the top muscles of the back, under the skin, along the line of the spinal column. An incision was made in the back and nearly a half gallon of pus and blood was drawn out. A drainage tube was inserted, which remained three or four weeks. The doctor testified to injuries to the spine and expressed his opinion, with reasons therefor, that the injury to the spine was permanent.

*Hatcher & Carson,* for plaintiff: *T. T. Miller,* for defendant.

ATKINSON, J. While, as a general rule, the question of damages is one for the jury, it does not follow that the court may not interfere where the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias. Civil Code, §3803. By the verdict the jury has found that the plaintiff is entitled to recover on account of the defendant's negligence. There was no evidence upon which the jury could have found that

the plaintiff was guilty of contributory negligence. The evidence disclosed that the plaintiff's husband had lived in the house to which the shed was attached, 8 or 9 years prior to the injury. The plaintiff testified: "So far as I could see, the shed was perfectly sound. I never examined the shed, but the shed seemed to be all right. I did not anticipate any danger at all from it. I have seen water back up along that street. I have seen the sidewalk covered with water two or three times. I lived there in that house with my husband all the time. . . I was living in that house at the time the sidewalk caved in. I saw how the sidewalk was fixed at the time it was repaired by the city, 18 months or 2 years before the accident. . . I could not say whether the hole in the sidewalk went to the cellar door or not. I never noticed it particularly. . . That is the only hole I remember being washed out before the accident." There was no other evidence tending to show knowledge upon the part of the plaintiff of the dangerous condition of the shed. In order for her to have assumed the risk of any danger incident to going under the shed, there must either be knowledge of the danger upon the part of the plaintiff, or the danger must be so obvious as that she would be charged with notice thereof. If she knew of the danger, or if the danger was so obvious as that she would be charged with notice thereof, it might be said, under authority of *Samples* v. *Atlanta,* 95 *Ga.* 110, that she voluntarily assumed the risk, and would be chargeable with negligence of some degree, merely by going into a dangerous place. But the facts are not such as to show that she knew of the danger, or that the danger was so apparent as to charge her with notice, and consequently it could not be said that she voluntarily assumed any risk. It is said that if the facts show negligence upon the part of the city, they of necessity show negligence upon the part of the plaintiff, because she had equal opportunities of knowing of the defects. This contention is not well founded, first, because it was not the plaintiff who repaired the hole, but the employees of the city, and it was the city's duty to know that they exercised all ordinary and reasonable care and diligence in making it safe; secondly, because, as ruled in *Idlett* v. *Atlanta,* 123 *Ga.* 821, "ordinary diligence on the part of a person passing along a sidewalk of a public street of a municipal corporation, and ordinary diligence on the part of the corporation in constructing and repairing the

sidewalk, do not imply a like degree of vigilance in foreseeing danger and guarding against it." If there was no evidence authorizing the jury to find the plaintiff guilty of contributory negligence, there was nothing that would authorize the jury to reduce the amount of damages naturally flowing from the injuries sustained.

The only other question, therefore, with which we are to deal is as to whether the amount fixed by the jury was so small and disproportionate to the pain and suffering endured from the injury as to justify the inference of gross mistake or undue bias. Under the evidence disclosed by the record, if the plaintiff was entitled to recover anything, she was entitled to recover damages commensurate with the injury sustained. One hundred dollars was the amount fixed by the jury, which we think is no compensation whatever for the pain and suffering already endured, to say nothing of the pain and suffering which will probably attend the plaintiff for the remainder of her life. It was insisted by counsel for the defendant in error that the verdict for this insignificant sum should be interpreted as a finding in favor of the city upon its contention that the city was not negligent, and that the pittance allowed by the jury was a matter of mere gratuity. We can not construe the verdict in that way. A verdict for the plaintiff could not have been lawfully had against the defendant upon any theory except that of the negligence of the defendant, described in the pleadings; and when the jury expressly found against the defendant, the verdict must be construed according to its recitals. The jury must be taken at its word, when by the effect of its verdict it finds that the city was negligent. In *Flanders* v. *Mealh,* 27 *Ga.* 358, an insignificant verdict against a defendant, unexcepted to by the defendant, but sought to be set aside by the plaintiff upon the ground of inadequacy, was allowed to stand, but the record in that case disclosed facts going to show that the conduct of the plaintiff was such as to have been the proximate cause of the injury, and for that reason the plaintiff was not entitled to recover anything whatever. Under those conditions, the court held that the plaintiff was not in a position to complain "for getting more than . . entitled to." The distinction will readily be observed between that and the present case, where the injury, instead of being due to the negligence of the plaintiff, was due to the negli-

gence of the city. The case now before us falls more within the ruling of *Potter* v. *Swindle,* 77 *Ga.* 419, wherein it was held that a verdict for $25 was no compensation whatever for injuries sustained by reason of an unlawful arrest and detention. We are constrained, therefore, to hold that in view of the evidence and the nature of the injury complained of and the small amount of the verdict, there was an abuse of discretion in not granting the plaintiff's motion for new trial. The evidence as to the defendant's negligence was of such character as to have authorized a finding in favor of either party. If the jury did not believe that the city was negligent, they should have returned a verdict in favor of the defendant; but if, on the other hand, they believed from the evidence that the city was negligent, and that its negligence resulted in the injury as set forth in the plaintiff's declaration, they should have found a verdict for the plaintiff for such an amount as would be fairly compensatory for the injury sustained.

*Judgment reversed. All the Justices concur.*