**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 12, 2018**

# In the Court of Appeals of Georgia

A18A0233. EVANS et al. v. ROCKDALE HOSPITAL, LLC.

BARNES, Presiding Judge.

Shawn G. Evans, individually and as the guardian of his wife, Janice K. Evans, brought this medical malpractice action against Rockdale Hospital, LLC d/b/a Rockdale Medical Center ("Rockdale") and other defendants after Mrs. Evans suffered catastrophic injuries from an undiagnosed ruptured aneurysm. Following a trial, the jury returned a special verdict finding Rockdale 51 percent at fault and Mrs. Evans 49 percent at fault. The jury awarded Mrs. Evans damages for her past medical expenses, but zero damages for future medical expenses, past and future lost wages, and past and future pain and suffering. The plaintiffs filed a motion for additur or, alternatively, for a new trial on damages, which the trial court denied, resulting in this appeal.

For the reasons discussed below, we conclude that the jury's award of zero damages for Mrs. Evans's past pain and suffering rendered the award of damages so clearly inadequate under a preponderance of the evidence as to shock the conscience

and necessitate a new trial under OCGA § 51-12-12 (b). Accordingly, we reverse the trial court's denial of the plaintiffs' motion. However, because this case involves issues of comparative negligence, the retrial on remand cannot be limited to the issue of damages and instead must encompass all issues.

Following a jury trial, we view the evidence in the light most favorable to the verdict. *Intl. Images v. Smith*, 171 Ga. App. 172, 172 (318 SE2d 711) (1984). So viewed, the evidence showed that on the night of Saturday, January 14, 2012, Mrs. Evans, who was 60 years old, woke up with the worst headache that she had ever experienced, jumped out of bed, and vomited on herself. She then had episodes of vomiting and diarrhea throughout the night. Mrs. Evans believed that she was suffering from food poisoning and had become dehydrated. However, a severe "thunderclap" headache, commonly described by patients as the worst headache in their life, followed by vomiting and nausea, are common symptoms associated with bleeding in the brain.

Mrs. Evans's symptoms did not subside over the next two days, and around 8:00 p.m. on Monday, January 16, 2012, Mr. Evans, her husband, drove her to the Rockdale emergency room. After arriving there, Mrs. Evans complained of dehydration, headache, diarrhea, and nausea, and she told the nursing staff that she might have food

2

poisoning from a local restaurant. The triage nurse failed to document Mrs. Evans's initial complaint of headache in the medical chart and chose the charting template on the computer for digestive system illnesses, which remained the template used by the nursing staff throughout Mrs. Evans's stay in the emergency room.

The triage nurse documented Mrs. Evans's initial blood pressure as 213/105, a blood pressure within the American Heart Association's guidelines for hypertensive crisis. All of the blood pressure readings subsequently taken by the emergency room nursing staff reflected that Mrs. Evans had a continued systolic blood pressure of over 200, which is "extremely high" and also can be a sign of bleeding in the brain. Additionally, Mrs. Evans requested medication for a severe throbbing headache, which she described as an 8 out of 10 on the hospital pain scale. Despite her complaint of a severe headache and high blood pressure, the nursing staff did not ask Mrs. Evans focused questions about her headache and thus did not learn from her and document in the medical chart that her initial onset of symptoms had involved her waking up with the most severe headache of her life.

Mrs. Evans was diagnosed with high blood pressure, nausea, and vomiting, with no specific cause identified. The emergency room physician told Mrs. Evans that he

was concerned about her high blood pressure and that she needed to see her primary care physician that week. Mrs. Evans was discharged from the emergency room in the early morning hours of January 17, 2012, and was instructed to return if her condition worsened.

After Mrs. Evans was discharged, Mr. Evans called a local primary care practice and made Mrs. Evans an appointment for the following Monday, the first available appointment. Mrs. Evans's severe headache and vomiting returned after she was discharged, and she continued to have those symptoms throughout the week. She fell several times during the week and had to crawl back to bed on at least one occasion. On January 22, 2012, Mr. Evans called 911 after Mrs. Evans began moving her mouth unnaturally while eating and was unable to get up from the couch.

Mrs. Evans was transported by ambulance to the Rockdale emergency room, where a CT scan showed a blood clot in her brain. She was transferred to Emory Hospital, and further testing revealed that she had suffered several strokes as a result of a ruptured brain aneurysm. Mrs. Evans underwent multiple surgeries and spent months in the hospital and a rehabilitation facility. She is permanently and totally

disabled, is incontinent, requires a feeding tube, cannot speak, has severe cognitive and other impairments, has a seizure disorder, and requires 24-hour care.

In August 2013, Mr. Evans, individually and as guardian of Mrs. Evans, sued Rockdale for medical malpractice and loss of consortium.[1] During the trial, the parties disputed whether Mrs. Evans suffered from a ruptured brain aneurysm when she presented at the emergency room on January 16, 2012, whether a diagnosis of a ruptured aneurysm on that date would have led to a better outcome, and whether the Rockdale emergency room nurses violated the standard of care. Rockdale also argued that Mrs. Evans's fault exceeded that of Rockdale because, among other things, she had not obtained treatment for her longstanding, uncontrolled hypertension despite being aware of that condition.

As to damages, the plaintiffs presented medical billing records reflecting that Mrs. Evans's total past medical expenses were $1,196,288.97, as well as testimony regarding the procedures and rehabilitation that she had to undergo after the ruptured aneurysm up to the point of trial. The plaintiffs also presented evidence of future

---

[1] The plaintiffs also sued the physician who saw Mrs. Evans during her initial visit to the Rockdale emergency room and the physician's employer, but the emergency room physician and his employer obtained defense verdicts and are not involved in this appeal.

medical expenses, past and future lost wages, and of Mrs. Evans's current impaired condition requiring 24-hour care. Mr. Evans and a certified nurse's aide testified to the care that had to be provided to Mrs. Evans, and the jury was shown a day-in-the-life video reflecting the care provided by Mr. Evans and the nurse's aide.

Rockdale did not contest that Mrs. Evans was catastrophically injured and did not address the issue of damages during closing argument. During the cross-examination of the plaintiffs' damages experts who opined on Mrs. Evans's lost wages and future medical expenses, Rockdale did challenge the experts' credibility and the extent of the damages sought for future medical expenses.

Following its deliberations, the jury returned its verdict on a special verdict form. In Section 1 of the verdict form, the jury awarded Mrs. Evans the amount she had requested in damages for past medical expenses ($1,196,288.97), but awarded her zero damages for future medical expenses, zero damages for past and future lost wages, and zero damages for past and future pain and suffering. The jury awarded Mr. Evans $67,555 in damages for loss of consortium. In Section 2 of the verdict form, the jury apportioned fault among the parties, finding that Rockdale was 51 percent at fault and that Mrs. Evans was 49 percent at fault. The trial court reduced the amount of

6

damages awarded by the jury in proportion to the percentages of fault and entered judgment in favor of the plaintiffs and against Rockdale in the amount of $586,191.60 for past medical expenses and $33,101.95 for loss of consortium.

The plaintiffs filed a motion for additur or for a new trial on the ground that the jury's award of damages against Rockdale was so clearly inadequate as to be inconsistent with the preponderance of the evidence. The plaintiffs contended that any new trial ordered by the trial court should be limited to the issue of damages. Rockdale opposed the motion, contending that the jury's damages award should not be disturbed and that any retrial could not be limited to the issue of damages because the case involved comparative negligence. Following a hearing, the trial court denied the plaintiffs' motion for additur or a new trial on damages, resulting in this appeal.

At the outset, we note that the plaintiffs' motion seeking a new trial as a result of inadequate damages is governed by OCGA § 51-12-12, which provides in part:

> (a) The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case.

> (b) If the jury's award of damages is clearly so inadequate or so excessive as to any party as to be inconsistent with the preponderance of the

7

evidence, the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court.

As the Supreme Court of Georgia has explained,

the focus of OCGA § 51-12-12, under which the award is being reviewed, is to allow the trial court to interfere with a jury verdict in two opposite situations – where the award is so inadequate or so excessive as to be contrary to the preponderance of the evidence. . . . Moreover, an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence.

(Citations, punctuation, and emphasis omitted.) *Moody v. Dykes*, 269 Ga. 217, 221 (6) (496 SE2d 907) (1998). Nevertheless, our Supreme Court has held that appellate courts are empowered to set aside a jury's damages award under OCGA § 51-12-12, see id., and an award that is so inadequate or excessive "as to shock the conscience" is subject to reversal on appeal. (Citation and punctuation omitted.) *Lindsey v. Turner*, 279 Ga. App. 595, 596 (1) (631 SE2d 789) (2006).

The burden on an appellant seeking reversal of the trial court is not an impossible one. See *Moore v. TCI Cablevision of Ga.*, 235 Ga. App. 796, 799 (2) (510

8

SE2d 96) (1998) (trial court abused its discretion in denying motion for new trial, where jury found defendant liable but awarded zero damages to the plaintiff, and the undisputed evidence showed that the plaintiff was seriously injured in a car collision). Indeed, even under the prior statute addressing inadequate damages, which required that the award be so small "as to justify the inference of gross mistake or undue bias," see Ga. Code 1933 § 105-2015,[2] Georgia appellate courts reversed trial courts and remanded for new trials where the uncontroverted evidence reflected that the jury's award of damages was grossly inadequate. See, e.g., *Anglin v. City of Columbus*, 128 Ga. 469, 472-473 (57 SE 780) (1907); *Carter v. Reese*, 150 Ga. App. 494, 495-496 (2) (258 SE2d 165) (1979); *Brewer v. Gittings*, 102 Ga. App. 367, 370-371 (1) (116 SE2d 500) (1960); *Koon v. Atlantic Coast Line R. Co.*, 90 Ga. App. 877, 878-879 (1) (84 SE2d 703) (1954); *Travers v. Macon R. & Light Co.*, 19 Ga. App. 15, 15-16 (90 SE2d 732) (1916). Mindful of the statutory framework and precedent, we turn to the plaintiffs specific arguments on appeal.

---

[2] Like the present version of the statute, the prior version afforded trial court's discretion in determining whether a jury's damages award was inadequate. See *Savannah, Florida & Weatern Ry. v. Harper*, 70 Ga. 119, 123 (1883) (noting that decision whether to grant a new trial because of excessive or inadequate damages "was a matter in the sound discretion of the [trial] court").

1. Mrs. Evans, through her husband as guardian, argues that the jury's award of zero damages for past pain and suffering rendered the damages on her medical malpractice claim so clearly inadequate under a preponderance of the evidence as to shock the conscience and require a new trial. We agree.

"The assessment of a monetary value for pain and suffering is a matter for the enlightened conscience of the jury," *Turpin v. Worley*, 206 Ga. App. 341, 343 (1) (425 SE2d 895) (1992), and the jury may consider

> [i]nterference with normal living, interference with enjoyment of life, loss of capacity to labor and earn money, impairment of bodily health and vigor, the fear of extent of injury, shock of impact, actual pain and suffering, past and future, mental anguish, past and future, [and the extent to which the plaintiff] must limit activities.

*Food Lion v. Williams*, 219 Ga. App. 352, 355 (3) (464 SE2d 913) (1995). Notably, however, "[t]he law infers bodily pain and suffering from personal injury." (Citations and punctuation omitted.) *Cochran v. Lynch*, 126 Ga. App. 866, 868 (2) (192 SE2d 165) (1972). See *Reiss v. Howard Johnson's, Inc.*, 121 Ga. App. 119, 119 (1) (173 SE2d 95) (1970). Moreover, once the jury determines that the plaintiff is entitled to recover from a defendant for a negligent act, the plaintiff is "entitled to recover damages commensurate with the injury sustained by her." *Slaughter v. Atlanta*

10

*Coca-Cola Bottling Co.*, 48 Ga. App. 327, 327 (172 SE 723) (1934). Thus, Georgia courts have reversed damages awards where the jury's award of damages for pain and suffering was small and grossly disproportionate to the undisputedly severe injury sustained by the plaintiff. See, e.g., *Anglin*, 128 Ga. at 472 (denial of new trial was error because "the amount fixed by the jury was so small and disproportionate to the pain and suffering endured from the injury as to justify the inference of gross mistake or undue bias"); *Slaughter*, 48 Ga. App. at 327-328 ("The amount of $1 fixed by the jury could not be considered as sufficient compensation for whatever pain and suffering the plaintiff may have endured."); *McLendon v. Floyd*, 59 Ga. App. 506, 506-507 (1939) (award of $300 in past medical costs was inadequate, requiring a new trial, where it was undisputed that the plaintiff also suffered pain and suffering and other damages). Compare *Turpin*, 206 Ga. App. at 341, 342-343 (1) (upholding jury award of $100 for pain and suffering, where plaintiff's primary complaint was headaches, and plaintiff's experts conceded that "there is no test that can be performed to detect these headaches," that the pain from headaches is "totally subjective," and that "it is extremely difficult to evaluate and prove a 'malingerer situation with headaches'").

11

Furthermore, we have held that the jury's award of damages was small and grossly inadequate so as to necessitate a new trial, where the jury awarded special damages for the severely injured party's medical expenses, but virtually no damages for the pain and suffering undisputedly sustained by the plaintiff as a result of the injury. See *Cothern v. Haygood*, 147 Ga. App. 200, 200 (248 SE2d 231) (1978) (reversing trial court and remanding for new trial in case where child was injured in motorcycle accident and suffered "permanent impairment," and the jury awarded medical expenses but only $1 for the child's pain and suffering); *Brewer v. Gittings*, 102 Ga. App. 367, 369-371 (1) (116 SE2d 500) (1960) (trial court should have granted new trial, where jury found defendant liable for serious skull and other injuries to child and awarded medical costs, but awarded only $10 for the child's pain and suffering). Similarly, in other jurisdictions,

> [v]erdicts awarding medical damages without a simultaneous award for damages for pain and suffering have been overturned, where a proper claim had been made, and at least a substantial physical injury, the existence of objective symptoms, or indisputable evidence that the plaintiff suffered at least some pain was shown.

22 AmJur2d Damages § 215 (November 2017 update) (citing cases).[3] As one court has explained, where "the evidence is undisputed or substantially undisputed that a plaintiff has experienced and will experience pain and suffering as a result of an accident, a zero award for pain and suffering is inadequate as a matter of law." (Citation and punctuation omitted). *Ellender v. Bricker*, 967 So2d 1088, 1093 (IV) (Fla. Dist. Ct. App. 2007). That is the situation here.

The jury awarded Mrs. Evans 100 percent of her past medical expenses, and the undisputed evidence from Mr. Evans, other witnesses, and Mrs. Evans's medical records introduced without objection reflected that she underwent multiple surgical

---

[3] See, e.g., *Ledbetter v. Todd*, 418 So2d 1116, 1117 (Fla. Dist. Ct. App. 1982) (once jury concluded that physician's malpractice causally contributed to plaintiff's arm injury, the jury's award of compensatory damages but no damages for pain and suffering could not be sustained because the surgeries underwent by plaintiff "must have caused some amount of pain and suffering [that the plaintiff] would not otherwise have experienced"); *Griffin v. Bethard*, 398 So2d 639, 643 (La. Ct. App. 1981) ("A jury cannot award special damages for personal injuries incurred in an accident and refuse to award any amount for general damages for injuries that present objective symptoms."); *Witt v. Martin*, 672 P2d 312, 317 (V) (Okla. Ct. App. 1983) (reversed and remanded for new trial, where "[t]he effect of the verdict was to award significant medical expenses and award nothing for any pain or other injury related detriment"); *Hammond v. Rimmer's Estate*, 643 SW2d 222, 224 (Tex. App. 1982) (jury's answer of "none" as to the amount of damages due for future pain and mental anguish was unsupported by evidence, where jury awarded medical expenses and other special damages, and evidence undisputedly showed that plaintiff was hospitalized for 29 days and had suffered neurological damage).

procedures and spent months in the hospital and a rehabilitation facility. The undisputed testimony from Mr. Evans, Mrs. Evans's certified nurse's aide, other witnesses, and the day-in-the-life video shown to the jury further demonstrated that Mrs. Evans is permanently and completely disabled, cannot speak, is incontinent, requires a feeding tube, has a seizure disorder, has severe cognitive and other impairments, and requires 24-hour care. Rockdale did not contest at trial Mrs. Evans's past medical expenses, the fact that she had undergone multiple surgical procedures and a long period of hospitalization, or that she now was so severely impaired that she requires 24-hour care; instead, Rockdale focused its closing argument solely on issues of negligence and causation. Moreover, Rockdale's own expert neurologist testified that Mrs. Evans had suffered multiple strokes and had been severely brain damaged, and Rockdale conceded at trial that Mrs. Evans had experienced a "catastrophic" injury and suffered a "devastating" loss and that patients with ruptured aneurysms "either die or they don't do well." Given this record, the jury's award of zero damages for Mrs. Evans's past pain and suffering, the same time period for which it awarded Mrs. Evans her past medical expenses, was so clearly inadequate under a preponderance of the

evidence as to shock the conscience and necessitate a new trial. See *Cothern*, 147 Ga.

App. at 200; *Brewer*, 102 Ga. App. at 368-369 (1).[4]

In arguing that the jury's damages award was not so clearly inadequate under

a preponderance of the evidence as to shock the conscience, Rockdale cites two cases

for the contention that a jury may award special damages for personal injuries, but no

damages for pain and suffering: *Salvador v. Coppinger*, 198 Ga. App. 386, 387-388

(1) (a) (401 SE2d 590) (1991), and *Ray v. Stinson*, 172 Ga. App. 718, 719-720 (1) (B)

(324 SE2d 506) (1984), aff'd on other grounds, 254 Ga. 375 (329 SE2d 502) (1985).

Both cases, however, are distinguishable from the present case.

---

[4] Rockdale notes that a jury may disregard expert opinion testimony, even if uncontradicted. See *Steward v. Med. Center of Central Ga.*, 239 Ga. App. 90, 91 (520 SE2d 747) (1999). However, the basic descriptions provided by multiple witnesses of Mrs. Evans's observable limitations and impairments, the 24-hour care she receives, and the history of her procedures and hospitalizations following her ruptured aneurysm constituted factual rather than opinion testimony. See *Cochran v. Lynch*, 126 Ga. App. 866, 867 (2) (192 SE2d 165) (1972). And, "[t]he direct and positive testimony of an unimpeached [fact] witness which is not inherently improbable, incredible or unreasonable and which is not contradicted, cannot be arbitrarily disregarded by the trier of fact." *Nesbit v. Nesbit*, 241 Ga. 351, 352 (2) (245 SE2d 303) (1978). See *Lankford v. Holton*, 187 Ga. 94, 102 (9) (200 SE 243) (1938); *Studebaker's of Savannah v. Tibbs*, 195 Ga. App. 142, 146 (3) (392 SE2d 908) (1990); *Cochran*, 126 Ga. App. at 867 (2).

15

In *Salvador*, the jury "awarded plaintiffs a total amount equal to the exact amount of the medical expenses requested and proved, but *left blank* the spaces provided for pain and suffering, lost wages, other expenses, and property damage." (Emphasis supplied.) *Salvador*, 198 Ga. App. at 386. Given that the jury had simply left the space blank for damages for pain and suffering, we declined to rule out the possibility that the jury had in fact intended some of the damages awarded to be for pain and suffering. Id. at 387 (1) (a). That possibility does not exist in the present case, however, given that the jury wrote in zero in the space on the verdict form for damages for pain and suffering.[5]

Similarly, in *Ray*, we noted that

> even though the jury's verdict specifically showed that no amount for pain and suffering had been awarded to plaintiff, in light of the fact that the jury awarded to plaintiff an amount for special damages beyond that proven in the case, we are of the opinion that the jury verdict could have included in the minds of the jury some amount for pain and suffering.

---

[5] We also noted in *Salvador* that we did not have a "full transcript" available to consider on appeal, and thus we had to "assume that the trial court's conclusions in denying the motion for new trial on the inadequacy of the verdict were proper." *Salvador*, 198 Ga. App. at 388 (1) (a). But the full transcript is available for our review in this case.

16

(Punctuation omitted.) *Ray*, 172 Ga. App. at 719 (1) (B). Here, in contrast, the jury did not award Mrs. Evans "special damages beyond that proven in the case," and thus a portion of the special damages cannot be said to have included some amount for pain and suffering.

Additionally, both *Salvador* and *Ray* concluded that the jury may have decided to award special damages, but not to award damages for pain and suffering, in light of the plaintiff's comparative negligence. See *Salvador*, 198 Ga. App. at 388 (1) (a); *Ray*, 172 Ga. App. at 719 (1) (B). But *Salvador* and *Ray* predate Georgia's present apportionment statute, OCGA § 51-12-33, which was enacted in 2005 and supplanted Georgia's common law comparative negligence regime with a statutory system of "assigning responsibility for an injury to a plaintiff according to his 'fault' under subsections (a) and (g) of the apportionment statute." *Zaldivar v. Prickett*, 297 Ga. 589, 594 (1) (774 SE2d 688) (2015). OCGA § 51-12-33 provides in relevant part:

> (a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault. . . .

17

(g) Notwithstanding the provisions of this Code section or any other provisions of law which might be construed to the contrary, the plaintiff shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed.

As our Supreme Court has explained, under the apportionment statute, "once liability has been established, the calculation of total damages sustained by the plaintiff is the first step, and the allocation of relative fault and award of damages according to that allocation is a distinct second step." *Martin v. Six Flags Over Georgia II*, 301 Ga. 323, 338-339 (III) (801 SE2d 24) (2017). Accordingly, unlike in *Salvador* and *Ray*, the jury in the present case was tasked with calculating the total damages owed to Mrs. Evans, including damages for past pain and suffering, as a distinct first step, separate and apart from any subsequent reduction in the total damages based on the percentage of Mrs. Evans's comparative fault, such as for her failure to seek treatment for her chronic hypertension.[6] See id. Rockdale's reliance on *Salvador* and *Ray* thus is misplaced.

---

[6] The instant case also is distinguishable from *Columbus Regional Healthcare System v. Henderson*, 282 Ga. 598 (652 SE2d 522) (2007), where the parents of a child who died of a cerebral hemorrhage sued the hospital to recover for medical malpractice and wrongful death. The jury awarded the plaintiffs damages for medical expenses and pain and suffering on their pre-death medical malpractice claim, but no damages on their wrongful death claim. Id. at 598-599. The trial court subsequently granted the plaintiffs' motion for additur under OCGA § 51-12-12 (b) based on the jury's award

18

Because the jury's award of zero damages for Mrs. Evans's past pain and suffering was so clearly inadequate under a preponderance of the evidence as to shock the conscience, a new trial is necessary, and the trial court abused its discretion in concluding otherwise. However, contrary to Mrs. Evans's argument, we conclude that the retrial cannot be limited solely to the issue of damages.

In cases like the present one involving issues of comparative negligence, the Georgia Supreme Court has held that review of the verdict is available under OCGA § 51-12-12, but if a new trial is ordered, it must encompass all issues and cannot be limited to damages. See *Head v. CSX Transp.*, 271 Ga. 670, 673 (4) (524 SE2d 215) (1999); *Robinson v. Star Gas of Hawkinsville*, 269 Ga. 102, 104-105 (2) (498 SE2d 524) (1998); *Bridges Farms v. Blue*, 267 Ga. 505, 505-506 (480 SE2d 598) (1997). While Mrs. Evans argues that a new trial limited to damages in comparative negligence

of no damages on the wrongful death claim. Id. at 599. The Georgia Supreme Court reversed, concluding that a jury's award of no damages on a claim "is not one reflecting 'inadequate' damages for which the trial court may use its power to add to the verdict under OCGA § 51-12-12 (b)." Id. at 600. See *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 578 (1) (586 SE2d 74) (2003) (award of zero damages on a claim is, in legal effect, a verdict in favor of the defendant on that claim). Here, the plaintiffs asserted two separate claims (medical malpractice and loss of consortium), but, in notable contrast to *Henderson*, the jury awarded some damages on *both* claims. *Henderson* therefore is inapposite.

cases is authorized by the plain language of OCGA § 51-12-12 (b) and by Georgia's apportionment statute, OCGA § 51-12-33, it is well-established that "this Court has no authority to overrule or modify a decision made by the Supreme Court of Georgia." (Citations and punctuation omitted.) *Ga. Ports Auth. v. Lawyer*, 342 Ga. App. 161, 163 (1) (803 SE2d 94) (2017).[7] Consequently, this Court is not at liberty to disregard the rule enunciated in *Head*, *Robinson*, and *Bridges Farms*. See id. See also *Hayward v. Retention Alternatives*, 291 Ga. App. 232, 234 (1) (661 SE2d 862) (2008). It follows that the retrial of Mrs. Evans's medical malpractice claim against Rockdale must encompass both liability and damages.[8]

2. Because Mrs. Evans's medical malpractice claim against Rockdale must be retried on all issues of liability and damages, Mr. Evans's derivative claim for loss of consortium also must be retried. See *Thomas v. Clark*, 188 Ga. App. 606, 608 (1), (3)

---

[7] In a recent case, the Supreme Court expressly declined to address whether the specific rule enunciated in *Head*, *Robinson*, and *Bridges Farms* for comparative negligence cases should be overruled or modified in light of Georgia's apportionment statute. See *Martin*, 301 Ga. at 340 (III), n. 10.

[8] Because we conclude that a retrial is necessary on Mrs. Evans's medical malpractice claim in light of the clearly inadequate damages award for past pain and suffering, we need not determine whether the jury's award of zero damages for future medical expenses, past and future lost wages, and future pain and suffering was so clearly inadequate under a preponderance of the evidence as to shock the conscience.

(373 SE2d 668) (1988) (concluding that because "the issue of comparative negligence is inextricably joined with the issue of damages," new trial was required on claims of both the injured wife and her husband, who asserted claims for payment of some of the wife's medical bills and for loss of consortium); *Hightower v. Landrum*, 109 Ga. App. 510, 514, (4) (136 SE2d 425) (1964) ("One spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other."). We therefore need not address Mr. Evans's contention that the jury's award of $67,555 in damages to him for loss of consortium rendered the verdict on that claim so clearly inadequate under a preponderance of the evidence so as to shock the conscience.

*Judgment reversed and case remanded with direction. Reese, J., concurs. McMillian, J., concurs in judgment only.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2.**